[Civ. No. 15603.   Second Dist., Div. One.   Aug. 18, 1947.]

MAE K. HOWARTH, Respondent, v. FRED J. HOWARTH, Appellant.

L. M. Cahill for Appellant.

Riccardi, Webster & Donahue and William J. Donahue for Respondent.

WHITE, J.—Plaintiff brought an action in the Superior Court of Los Angeles County against her former husband to recover sums alleged to be due under the terms of a property settlement and separation agreement. From a judgment in favor of plaintiff for the sum of $2,640 defendant prosecutes this appeal.

By her complaint, entitled "Complaint for Money Due Under Terms of Written Contract," plaintiff alleged that the defendant was awarded an interlocutory decree of divorce on June 2, 1943, in the District Court of the Third Judicial District, Tooele County, Utah, which interlocutory decree became

final six months thereafter; that on July 3, 1941, the parties entered into a "property settlement and separation agreement," which provided among other things that:

"The husband shall pay to the wife upon the execution of this agreement the sum of Five Hundred Seven Dollars and Fifty Cents ($507.50), and he shall thereafter pay to the wife the sum of Thirty-Five Dollars ($35.00) on Friday of every calendar week beginning with Friday the 4th day of July, 1941, and continuing during the remainder of her life time; provided that in event the marriage between the parties hereto is subsequently dissolved by divorce or death of the husband, and the wife remarries, the weekly payments provided in this paragraph shall terminate upon such remarriage."

Plaintiff further alleged that she had not remarried; that she had performed all things required of her under the agreement; and that there remained due and unpaid thereunder the sum of $2,640.

By his answer defendant admitted the execution of the agreement and the entry of the decree of divorce, and alleged that the agreement was presented to the Utah court "for adjudication in said action and that it was by said Court incorporated in and made an operative part of said decree of divorce." A copy of the agreement was annexed to the answer. Defendant further alleged:

"That said 'Property Settlement and Separation Agreement' provided that plaintiff herein would retain the custody of the two minor children of the parties and that she maintain and support them until the expiration of the period of minority of each of said children and that this answering defendant would pay the sum of $35.00 weekly to plaintiff for her support and for the support of said children and that this answering defendant would not be otherwise liable for the support of said children except for medical attention or services of dentists, physicians or surgeons rendered for or to said children, or either of them, during minority, and also all liabilities incurred as tuition charges or extra costs in connection with the further education might be mutually agreed upon. That the oldest of said children reached the age of majority on December 4, 1942, and the youngest of said children who would have reached the age of majority on February 29, 1945, married during the month of August, 1943. That plaintiff herein is possessed of independent means and income *for* more than sufficient for her maintenance and support and has been so

possessed and enjoyed such income at all times from December 4, 1942, and August 1943.''

At the opening of the trial defendant objected that under the pleadings the court lacked jurisdiction of the defendant or the cause of action as the monies sought to be recovered were for the support of the wife and the agreement providing for payment of the same, having been incorporated in the Utah decree of divorce, had become merged therein, and that therefore a complaint based upon the agreement rather than the Utah judgment did not state a cause of action. This objection was overruled, and at the court's suggestion the judgment roll in the Utah divorce action was offered in evidence by the defendant.

By its conclusions of law the trial court held that the property settlement agreement was not ''incorporated in, nor made an operative part'' of the Utah decree of divorce; that the payments provided to be made by the husband under the agreement were for the support of the wife and no other person; and ''That said payments were not in the nature of alimony, but were by way of property settlement.''

Appellant, relying chiefly upon *Hough* v. *Hough,* 26 Cal.2d 605 [160 P.2d 15], to which further reference will hereafter be made, contends that the property settlement agreement here in question was incorporated and merged in the decree of the Utah court, and that it thereby lost its independent entity, leaving ''no remedy of enforcement on the contract.'' The record before us discloses that by their agreement, described as a ''property settlement and separation agreement,'' entered into in July, 1941, in Los Angeles County, the parties declared their intention ''to settle, by these presents, their property relations.'' The wife was given the home of the parties, an automobile, and a bank account of $100. The husband retained an automobile, 190 shares of stock in a real estate development company, an exclusive contract for the sale of certain land, and $500 cash. The husband agreed to pay off a mortgage on the home retained by the wife. The wife agreed to care for the minor daughters, and the husband agreed to pay for medical care and education of the children. It was further agreed that the husband pay to the wife $507.50, and that ''he shall thereafter pay to the wife the sum of Thirty-Five Dollars ($35.00) on Friday of every calendar week . . . and continuing during the remainder of her lifetime,'' with a provision that such payments should terminate

upon remarriage of the wife. It was further agreed that: "The weekly payments provided by paragraph 12 are for the support of the wife and such payments shall terminate upon her death, and her rights under said paragraph shall not be assignable to any person or persons during her lifetime, and in the event of the death of the husband during the period in which the wife is entitled to said payments his estate shall continue such payments to the extent of the assets of said estate, and the claim of the wife against said estate shall be treated as preferred." By another paragraph each party waived all right to participate in the estate of the other, "except as in this agreement otherwise provided, and each party hereto hereby expressly waives and relinquishes any right to receive alimony or separate maintenance from the other and any right to claim from the other any court costs or attorney fees in any proceeding whatsoever, except as in this agreement otherwise provided."

Upon the question of whether the agreement was "incorporated in and made an operative part of" the Utah decree, the judgment roll in the Utah action discloses the following: By his complaint for divorce filed in 1943, the husband alleged the making of the property settlement agreement and prayed that the court "confirm the agreement of the plaintiff and defendant hereto attached as Exhibit A." The wife appeared only by filing a waiver of time to answer, and her default was entered. After trial, the Utah District Court made findings of fact, which included a finding "that the parties to this action entered into an agreement *as to the division of their community property,* (emphasis added), a copy of which is attached to the complaint herein, and is by reference made a part of these findings of fact, and that such agreement is just and proper in its terms and has been completely complied with by the plaintiff up to the date of the hearing of this action." Among its conclusions of law the court stated: "That the property settlement agreement entered into by and between the parties hereto and attached to the complaint herein be and is hereby confirmed and approved." The interlocutory decree contains the following with reference to the agreement: "That the property settlement and agreement attached to the complaint on file herein which has been entered into by and between the parties hereto *relative to their property* is hereby confirmed and approved."

Appellant's contention that the agreement was incorporated

in the decree of the Utah District Court, was merged therein, and that therefore no right of action exists on the agreement itself, cannot prevail. As appears from the facts hereinbefore recited, the decree did not order either party to do anything with respect to the agreement. No part of the agreement was actually contained in the decree itself. The husband was not ordered to pay the wife the sums specified in the agreement. The court by its findings of fact found that the parties had entered into the agreement, which by reference was made a part of the findings of fact, and by its decree the court ''confirmed and approved'' the agreement. In none of the cases cited by appellant was it held that upon a record such as the one now before us the agreement had been merged in the decree or that the complaining party had a right of action on the decree or could enforce compliance therewith by contempt proceedings.

The case of *Hough* v. *Hough,* 26 Cal.2d 605 [160 P.2d 15], holds that if a separation agreement ''is presented to the court in the divorce proceeding for adjudication, and the agreement, or a part thereof, is incorporated in the decree and made a part thereof, the part so incorporated is merged in the decree.'' The court further said, ''And it should logically and justly follow therefrom that thereafter there is no right of action on the agreement incorporated in the decree.'' The facts in the cited case, however, were that the provisions of the agreement as to payments by the husband to the wife were incorporated in the decree, not merely by reference, but by adopting the language of the agreement in the form of a direct order. Moreover, the trial court had there found that the monthly payments to the wife were in the nature of alimony and not in the nature of a property settlement, and hence the order for such payments was subject to modification in the same manner as an order based solely upon the statutory power of the court. The following language in the Hough case indicates that the Supreme Court did not hold that a merger is effected in a situation such as is presented in the case at bar:

''An award of alimony in a divorce decree may be modified under appropriate circumstances (Civ. Code, § 139; *Leupe* v. *Leupe, supra* [21 Cal.2d 145 (130 P.2d 697)]; *Puckett* v. *Puckett, supra* [21 Cal.2d 833 (136 P.2d 1)]), and the incorporation of an agreement in the decree for the payment of support as long as it is not a property settlement agreement

does not prevent a modification of the decree under appropriate circumstances. . . . (Citing cases.) . . . In *Lazar* v. *Superior Court,* 16 Cal.2d 617 [107 P.2d 249], the agreement authorized its incorporation in the decree, but this court in determining whether the agreement was sufficiently incorporated in the decree to justify a contempt citation for disobedience, stated at page 620:

" 'If a property settlement agreement is complete in itself and is *merely referred* to in a divorce decree or approved by the court *but not actually made a part* of the decree, then the provisions of such agreement cannot be enforced by contempt proceedings. (*Baxter* v. *Baxter,* 3 Cal.App.2d 676 [40 P.2d 536] ; *Schnerr* v. *Schnerr,* 128 Cal.App. 363 [17 P.2d 749].) On the other hand, if, by the language of the agreement itself, it is shown that the intent was to make the agreement a part of a future divorce decree and, if the agreement is actually incorporated in the decree, then *such provisions become a part of the order of the court and may be enforced as such.'* (Emphasis added.)    The essence of that statement is that the agreement becomes merged in the decree. It is not vital that the agreement so provides. The action of the parties and the court in the divorce proceeding may be determinative.''

The interlocutory decree entered in the instant case, which became final on December 5, 1943, does not mention the subject of alimony. It simply confirms and approves a ''property settlement agreement'' entered into between the parties. Such a decree does not contain any direction or order for the payment of any sum of money, nor does it direct the plaintiff to perform the terms of the agreement. The decree herein is therefore not only legally insufficient to warrant the docketing of any money judgment against the plaintiff, but is wholly insufficient to support contempt proceedings because by the decree no duty or obligation whatever is imposed thereby on the plaintiff in the divorce action. The duty or obligation imposed upon the plaintiff in the Utah divorce action was not at all ascertainable from the decree itself, and the defendant wife's rights were dependent upon an action to enforce the provisions of the agreement itself. It must therefore be held that the conclusion of law arrived at by the trial court herein that the property settlement agreement was not ''incorporated in, nor made an operative part'' of the Utah decree of divorce was correct. While the property settlement agreement was presented to the court in the divorce proceeding for adjudica-

tion, it was not in its entirety nor in part incorporated in the decree, consequently, it was not wholly nor in part merged in the decree. Therefore, the obligations imposed by the agreement are not enforceable other than by a civil action upon the contract.

Appellant's contention that he may not be deprived of the right to have the support provisions of the Utah court decree modified as provided by the laws of the State of Utah without denying to him the rights guaranteed him by the provisions of section 13, article I of the Constitution of the State of California and by subdivision 1 of the Fourteenth Amendment to the Constitution of the United States, cannot be sustained.

It is true, as urged by appellant, that section 1212, Compiled Laws, 1907, of the State of Utah, confers upon the courts of that state powers in reference to support provisions set forth in a divorce decree similar to those provided in section 139 of the Civil Code of California, but the power to change, modify or revise such provisions in a decree of divorce is dependent upon such provisions being incorporated in the decree. And where such provisions are stipulated to by the parties in the form of an agreement between them it is only when the provisions of the separation agreement are incorporated in the decree that the former is superseded by the latter and that the obligations cease to be those imposed by the contract and become enforceable because of their imposition by the decree. As was said in *Hough* v. *Hough, supra,* page 610, "When [the agreement] is incorporated in and made an operative part of the decree, there is no longer any occasion for its independent existence." Such is also the holding by the courts of Utah, as evidenced by the cases of *Buzzo* v. *Buzzo,* 45 Utah 625, 627 [148 P. 362] ; *Barraclough* v. *Barraclough,* 100 Utah 196 [111 P.2d 792] ; *Jones* v. *Jones,* 104 Utah 275 [139 P.2d 222, 223] ; *Hamilton* v. *Hamilton,* 89 Utah 554 [58 P.2d 11, 13, 14]. It is manifest from what we have heretofore stated that the separation agreement of the parties was not "incorporated in and made an operative part" of the decree.

Appellant earnestly urges that the conclusion of law reached by the trial court that "said payments were not in the nature of alimony, but were by way of property settlement," is erroneous because the agreement expressly provides to the contrary. This argument is based on the language of the agreement reading: "15. The weekly payments provided

by paragraph 12 are for the support of the wife." However, this quotation from paragraph 15 of the contract is followed by the following language: "And in the event of the death of the husband during the period in which the wife is entitled to said payments his estate shall continue such payments to the extent of the assets of said estate, and the claim of the wife against such estate shall be treated as preferred. ■ The legal obligation imposed by law to support the wife by payment of permanent alimony comes to an end upon the death of either party. The finding of the court that the payments provided for by said paragraph "were not in the nature of alimony, but were by way of property settlement," is amply supported by the contract itself, which was introduced in evidence. The obligation does not rest upon the duty imposed by law upon a husband to support his wife, but upon the contract of the parties thereto. It was an award to her of a life annuity so long as she did not remarry, given to the wife as part of a property settlement contract. (*Parker* v. *Parker,* 193 Cal. 478, 480, 481 [225 P. 447].) In the cases cited by appellant the obligation of the husband to pay alimony for the support of the wife terminated upon his death. Such cases are therefore readily distinguishable from the case at bar.

For the foregoing reasons the judgment is affirmed.

York, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 16, 1947. Carter, J., and Schauer, J., voted for a hearing.