# DIXON v. DIXON.

No. 7645.   Decided February 23, 1952.   (240 P. 2d 1211.)

See 27 C. J. S., Divorce, sec. 299. Alimony decree, modification of, 17 Am. Jur., Divorce and Separation, sec. 649; 6 A. L. R. 2d 1302.

*Ben E. Roberts,* Salt Lake City, for appellant.

*E. LeRoy Shields,* Salt Lake City, for respondent.

McDONOUGH, Justice.

Plaintiff obtained a decree of divorce from defendant on September 28, 1948. This decree awarded plaintiff custody of three children, $75 per month for the support of the children, and in lieu of alimony it awarded plaintiff certain personal property plus defendant's interest in some tourist cabins which were purchased with the joint funds of the parties during their marriage. The decree further provided that in the event plaintiff failed to make the remaining payments on the mortgage on the cabins, or upon other indebtedness secured by the cabins, the defendant then had the right to meet such indebtedness and to require plaintiff to quit claim the property to him.

During the interlocutory period, plaintiff became ill and defendant paid the remaining balance on the mortgage principal plus interest, and fire insurance premiums. In May, 1949, after the original decree became final, defendand petitioned the court for custody of the children, alleging plaintiff's uncapability and unfitness to care for them, and for the title to the property under the provisions of the original decree, alleging that plaintiff had defaulted on mortgage payments and other indebtedness.

The court set the matter for hearing on July 8, 1949, at which time both parties appeared. There is no indication that there was a hearing on the merits at this time, but

rather, a stipulation was made between the parties which read as follows:

"That the defendant be given temporary custody of the three minor children of the parties pending the trial of the cause at a later date; and that plaintiff may live in the cabins during this period, but that the defendant shall have active management and control of the property; further ordered that one of the counsel for the parties should prepare an order in accordance with said stipulation."

A minute order subsequently entered embodied the terms of the stipulation.

Neither of counsel drew up an order in compliance with this stipulation until March 8, 1950 when one was presented by counsel for defendant. The court, by a judge other than the one who made the temporary order eight months before, acting on this proposed order, entered a formal order on April 3, 1950. This formal order found that plaintiff had not made certain payments as provided in the original decree and that hence

"defendant was entitled to a decree of this court awarding to him the said property"

and that the

"decree of divorce heretofore entered herein be modified, and the care, custody, control and education of the children, * * * be given to defendant * * * and the following property to-wit * * * be awarded to defendant with the understanding that he pay all obligations that now exist against the property."

On July 10, 1950, plaintiff moved to strike the formal order on the grounds that no hearing had ever been conducted. Defendant then filed a motion to amend the record by supplying the minutes of the July 8, 1949 proceeding. Plaintiff followed on August 30, 1950 with a petition for modification of the original decree and for a judgment vacating the formal order of April 3rd, alleging certain merits of her case. After hearing evidence on the motion and petition, the court held that the formal order of April

3rd was only a temporary order in view of the minute order, and hence was not final or conclusive as to the rights of the parties; that it did not reflect the decision of the court made pursuant to the stipulation of July 1949, and hence plaintiff was to be relieved of the effects thereof. The court further modified the original decree by allowing defendant custody of the children until the court further ordered, and by deciding that defendant's interest in the property at this time was $4,321 and plaintiff's interest was $8,400. The court then gave plaintiff the right to pay defendant the $4,321 and obtain a warranty deed from him, or upon her failure to do so, ordered the defendant to pay plaintiff $8,400 on certain terms. It was further ordered that defendant secure his obligation by obtaining a $5,000 life insurance policy upon himself, naming plaintiff as beneficiary, until said debt was paid.

As is readily seen, the formal order of April 3rd is not in compliance with the minute order which it was intended to express. The minute order indicated that hearing on the merits was to be had at some future date. Its provisions were intended to be temporary in nature. It states that the defendant is only to have the management of the property and the custody of the children until a hearing is had at a later date. The record shows that there was no hearing on the merits until September of 1950. It is therefor apparent that counsel who presented the order on March 8, 1950 had prepared it with no recollection of the provisions of the stipulation, and that the judge signed the formal order under a mistaken belief that it conformed to an order therefore made.

Defendant appeals basically contending:

(1)   The formal order of April 3d supersedes the minute order of July 8, 1949, is res adjudicata, and is not subject to attack since no appeal was taken, and no motion made to vacate it within three months.

(2)   The court had no authority to enter the above judgment, since the original decree became final, fixed the property rights between the parties, and could not be altered thereafter.

It is the appellant's contention that the formal order of April 3, 1950 superseded the minute order. He further contends that even though erroneously entered, it constituted such error on the part of the court as can be corrected only by appeal or upon motion for a new ■ trial. To sustain this position, appellant cites several cases to the effect that a formal order constitutes the court's decision and supersedes a prior minute order though it may differ from the latter. These cases are not applicable under the facts of the case before us. In the first place, they pertain to situations where there was an actual hearing on the merits. None of them held that an order which recites that a hearing has been conducted on the merits should be permitted to stand when it clearly appears from the record that there has been no hearing. Furthermore, under Rule 60 (b), U. R. C. P., it is provided that on motion and upon such terms as are just, the court may in the furtherance of justice release the party or his legal representative from a final judgment, order, or proceeding for specified reasons. The reasons stated are seven in number. The rules provides that

"The motion shall be made within a reasonable time and for reasons (1), (2), (3), or (4), not more than 3 months after the judgment, order, or proceeding was entered or taken."

Mistake, inadvertence, surprise, or excusable neglect, constitute ground (1) and hence should be made within a period of three months from the entry of the judgment or order relief from which is being asked. It will be noted that a few days more than three months had expired after the formal order was entered before the petition to set it aside was filed. However, the formal order of April 3, 1950, was more than a mere inadvertence. The record as

corrected by the inclusion therein of the minute order of July 8, 1949, clearly indicates that the signing and entering of such formal order was done upon the erroneous assumption that it conformed to a direction of the court theretofore made after hearing on the merits. In light of the allegations of plaintiff's petition requesting that it be set aside it would work upon her a grave injustice to permit the order to stand. Under Rule 60(b), U. R. C. P., a judgment or order may be set aside for any reason other than those specified in reasons 1 to 6 "justifying relief from the operation of the judgment," if motion is made within reasonable time. In view of plaintiff's physical and mental condition, we cannot say that application for the relief asked was unseasonably made. Furthermore, in the absence of a rule to that effect, the court, perhaps, had inherent power to set the formal order aside. See *In re Evans*, 42 Utah 282, 130 P. 217.

The formal order of the court having been set aside, the trial court had before it for hearing the petition of the defendant requesting modification of the decree and plaintiff's subsequent petition for modification which the court then properly regarded as being an answer to the petition of defendant. After a full hearing, the trial court modified the original decree as hereinabove recited. It is contended by the defendant, appellant herein, that the court committed error in so doing. He states that there being no allegation of changed circumstances and, the decree having become final, the court was without jurisdiction to modify it. It is true, as counsel contend, that under Section 40-3-5, U. C. A. 1943, providing that such changes may be made in a decree of divorce with respect to the distribution of the property as shall be reasonable and proper, has been construed, practically since its enactment, to confer jurisdiction upon the court to make such changes in those cases only where there has been a change in the circumstances or condition of a party since the entry of

the original decree. See *Barraclough* v. *Barraclough,* 100 Utah 196, 111 P. 2d 792, and cases there cited.

However, counsel overlooks the fact that in defend's own petition asking for modification it is alleged

"that due to the plaintiff's mental and physical condition she became unable to properly manage the motor court business."

This allegation taken in connection with the allegations of the plaintiff's petition were sufficient to justify the court in inquiring into the defendant's health and her ability to take care of herself. The record discloses that shortly after the temporary order of July 8, 1949, plaintiff was taken by her relatives and placed in a mental hospital where she remained for seven weeks. The court in its modified decree gave the custody and control of the minor children to the defendant until such time as the plaintiff was restored to such physical and mental health as to be able to take care of them. A change in her circumstances was therefore alleged and proved.

But appellant asserts that the original decree by its own provisions gave him the property upon his complying with the condition inserted in the decree, to wit, that the pay off the indebtedness if plaintiff did not pay the same as it became due. But we are unwilling to ascribe to the judge who entered the original decree an intent that this provision of the decree was to be operative in case the inability of plaintiff to pay off the indebtedness is due to her mental and physical ill health. That it was not so intended, the trial judge who entered the modified decree readily perceived. Were it given effect in such circumstance, respondent would thereby acquire all of the respondent's interest in the property, both her original interest and that decreed to her in lieu of alimony, upon her default of payment as a result of mental and physical illness which incapacitated her from paying the obligations incurred by both parties. This in spite of the fact that appellant was

held to be the party at fault in the divorce proceedings. Such result was surely not within the contemplation of the court when it made the original decree. Hence, the trial court did not err in having the petitions on the merits and in entering a decree based upon conditions revealed at the time of such hearing.

Upon the hearing of the petition, the trial court found, and the record fully supports, that of the original down payment of $5,000 on the $10,000 purchase price of the cabins, plaintiff furnished $4,062.50 (81¾%), and defendant furnished $937.50 (18¼%). It also appears that $1,000 was paid on the mortgage out of proceeds from the business. The court apportioned this amount 81¾% to plaintiff and 18¼% to defendant, increasing plaintiff's equity to $4,875 and defendant's equity to $1125. Defendant made a further mortgage payment of $500, making his equity at the date of entry of the divorce decree $1,625.

The court also allowed plaintiff $1,400 of the net rentals during the period defendant operated the property pending the hearing, and there is no basis in the record on which to disturb this determination. Hence, the amount to be recovered by the plaintiff should have been her ■ own equity in the property (4,875), plus the amount of defendant's equity at the time of the divorce decree ($1,-625) in lieu of alimony, plus her share of the income ($1,-400), making a principle total of $7,900, instead of $8,400 as found by the trial court due to computation error. We believe that under the testimony in the record, the court's finding of $4,321.06 as the amount of defendant's money equity is substantially correct and should not be disturbed. In view of these findings, which are substantially supported by the record, there is no abuse of discretion on which we, as appellate court, can reverse the decision.

One further question remains, namely, whether the trial court erred in requiring the defendant to obtain a life insurance policy in order to secure his indebtedness to the

plaintiff should he obtain title to the property. He contends that the trial court had before it no evidence as to his insurability or any other circumstance connected with the securing of insurance. Of course, if the defendant was found to be uninsurable that would be ample excuse for his failure to secure the insurance. However, it may well be that in view of the nature of the defendant's employment that he would be engaged in an occupation which would require the payment of premiums based upon extra hazardness. We are of the opinion that the trial court should take evidence on the question and, in light of such evidence, determine whether if defendant receives title to the property in question impressing such property with a lien in favor of the plaintiff would not adequately secure defendant's indebtedness to her.

The decree here appealed from is modified by changing the principal amount due respondent from $8,400 to $7,900. The decree as so modified is affirmed except as to the requirement thereof relative to insurance. As to such item, the case is remanded for proceedings in accordance with this opinion. Costs to respondent.

WOLFE, C. J., and WADE, CROCKETT and HENRIOD, JJ., concur.