**Debbie Ann ZAHARIAS, Plaintiff and Respondent,**

v.

**George Richard ZAHARIAS, Defendant and Appellant.**

**No. 17636.**

Supreme Court of Utah.

Aug. 12, 1982.

G. Blaine Davis, Salt Lake City, for defendant and appellant.

Larry N. Long, Virginia Curtis Lee, Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

The defendant, George Richard Zaharias, appeals from a judgment which ordered that the proceeds from the sale of a house and lot, the parties' former residence, be distributed in the sum of $18,151.20 to plaintiff Debbie Ann Zaharias, and $411.05 to him.

On June 14, 1974, the plaintiff was awarded a decree of divorce from the defendant and the equity of the parties in their residence. Paragraph 5 of the amended decree of divorce provides that:

> ... plaintiff will assume and pay the balance of the monthly payments due on said residence, in consideration of which the plaintiff is awarded the equity of the parties in the residence, generally known as 4104 Osprey Avenue, Granger, Salt Lake County, State of Utah 84120, and more particularly described as: The West 100 feet of Lot 60, Fairland Heights # 5 Subdivision; *if plaintiff should default in payments herein on this or other contracts, defendant may take possession and assume ownership by bringing all accounts current, and, thereafter, making payments on the same.* (Italics added.)

The decree further required the parties to sign any documents necessary to carry out the provisions of the decree and on June 11, 1974, the defendant executed a Quitclaim Deed conveying all of his right, title and interest in the Osprey Avenue residence to the plaintiff. She thereafter recorded the deed.

Pursuant to the terms of the decree, the plaintiff made the payments on the mortgage on the residence until January of 1980. She failed to make the payment for that month as it fell due on January 2, but mailed a check for the payment on February 5. Meanwhile, defendant learned of the nonpayment and borrowed money from his mother and made two payments on February 7, for January and February. He then filed a lis pendens on the residence and filed a petition for an order to show cause in the court below requesting that he be awarded the ownership, use and occupancy of the home subject to whatever equitable interest may be in the plaintiff.

Plaintiff had not made the mortgage payment for January because she either had negotiated or was in the process of negotiating a sale of the home and she was given an extension of time by the mortgagee to make that payment. The sale of the home was closed in March after the defendant released his lis pendens upon the condition that the proceeds be held in escrow until the dispute could be resolved.

On November 10, 1980, a hearing was held on defendant's order to show cause following which the trial judge entered a judgment awarding defendant $411.05, which was the total principal, interest and late charges he had paid, and awarding plaintiff the remaining $18,562.25.

Defendant contends that the plaintiff "defaulted" in making the mortgage payments and that under the terms of the decree of divorce he was entitled, by operation of law, to ownership and possession of the property when he made the two payments. He charges that the trial court in effect modified the decree of divorce without having before it any evidence that there had been changes in circumstances justifying a modification. He further argues that the equitable powers of the court should not be employed to relieve the plaintiff from a bargain she voluntarily made.

 The defendant is correct that our law requires the moving party to demonstrate that a change of circumstances has occurred before a decree of divorce can be modified. *Hamilton v. Hamilton,* 89 Utah 554, 58 P.2d 11 (1936); *Hogge v. Hogge,* 649 P.2d 51 (1982). However, the lower court did not modify the decree but merely construed its language. We believe that the purpose of the provision in the decree that the defendant could take possession and ownership of the property upon the plaintiff's default by bringing the payments current and keeping them current, was to preserve their equity which had been awarded to the plaintiff and prevent it from being lost to the parties by any default on her part. That is a commendable objective when dividing property in a divorce. Here, however, the plaintiff was never in default with her creditor, the mortgagee. It is undisputed that the mortgagee had extended her time to make the January payment in view of her sale of the property. The mortgagee did not consider the mortgage to be in default and the property was not in any peril because that payment had not been timely made. While there is no evi-

dence before us as to any grace period, we cannot assume that the plaintiff was in "default" on her February payment when the defendant paid it on February 7, just five days after its due date. In short, a default as contemplated by the decree of divorce did not take place, and the trial court properly denied the defendant's petition to have the property awarded to him. Defendant was not entitled to more than reimbursement for the two payments which he made.

Having taken the view that the plaintiff was never in "default" in her payments, it is unnecessary for us here to decide whether equitable grounds existed to relieve her from the provision of the decree involved here. See *Dixon v. Dixon,* 121 Utah 259, 240 P.2d 1211 (1952) where a divorced wife was relieved from the effects of a similar provision because her physical and mental illness had prevented her from making timely payment of a mortgage.

The judgment below is affirmed. Costs to plaintiff.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.